UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES F. MARTIN,

    Plaintiff                                  Civil Action No. 14-14343

v.                                            HON. VICTORIA A. ROBERTS
                                              U.S. District Judge
                                              HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

     Plaintiff Charles Martin ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Doc. #14] be GRANTED and that Plaintiff's motion [Doc. #13] be DENIED.

**PROCEDURAL HISTORY**

     Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on November 2, 2011, alleging disability beginning

January 20, 2010 (Tr. 147, 153). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on April 17, 2013 before Administrative Law Judge ("ALJ") David Neumann (Tr. 34). Plaintiff, represented by attorney Steven Harthorne, testified (Tr. 37-66), as did vocational expert ("VE") Don Harrison (Tr. 66-69). On July 24, 2013, ALJ Neumann found Plaintiff not disabled (Tr. 29). On September 15, 2014, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on November 12, 2014.

## BACKGROUND FACTS

Plaintiff, born January 14, 1986, was 27 at the time of the administrative decision (Tr. 29, 147). He completed one year of college (Tr. 182) and worked previously as a pizza delivery driver, fast food worker, and a factory worker (Tr. 182). He alleges disability due to depression, Post Traumatic Stress Disorder ("PTSD"), chronic back pain, and kidney, knee, and hip problems (Tr. 181).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He currently lived in Gibraltar, Michigan (Tr. 37). He underwent left knee surgery in April, 2007 and had a "severely atrophic" right kidney (Tr. 38). He lived with his girlfriend and her mother (Tr. 45). He was right-handed, stood 6'2" and weighed 315 pounds (Tr. 45). He attended college for one semester (Tr. 26).

Plaintiff required the use of a cane (Tr. 46). He was unable to work due to walking

and sitting limitations resulting from right hip and leg pain (Tr. 47). Plaintiff, a half-pack-a-day smoker, experienced shortness of breath "all the time" (Tr. 48). In March, 2011, he injured his hand moving a 900-pound pizza oven (Tr. 48, 52). He worked as a cashier until March, 2011 when he injured his hand (Tr. 50). In December, 2010, he spent one day hauling drywall to a dumpster (Tr. 51). He stopped working "on the payroll" as of January, 2010 (Tr. 54).

Plaintiff currently took Vicodin for pain and Paxil for anxiety and depression (Tr. 54). He was unable to walk more than 20 feet (Tr. 55). He had been able to lift up to 100 pounds through March, 2011 but had not since done any lifting, carrying, pushing, or pulling (Tr. 55-56). On a typical day, he would arise at 9:30 or 10:00 a.m. and retire at 3:00 a.m. (Tr. 56). He experienced sleep disturbances and customarily took a one-hour nap each day (Tr. 56). He was able to care for his personal needs but did not shop (Tr. 56). He did not cook and was unable to wash dishes by hand, vacuum, sweep, mop, take out trash, or perform yard work (Tr. 57-58). His girlfriend performed all of the laundry chores (Tr. 57). He had not attended church since January, 2010 (Tr. 57). He was able to drive up to 20 minutes at a time (Tr. 58). He spent time each day lying on the couch watching television (Tr. 58). He did not use a computer, but read novels (Tr. 58). He denied the use of recreational drugs but acknowledged that he drank two beers on his last birthday (Tr. 59).

In response to questioning by his attorney, Plaintiff testified that the hip problems began in high school after he sustained a football injury (Tr. 60). His hip condition had

worsened since high school (Tr. 61). He reported that he dislocated his right hip a few months before the hearing, adding that his girlfriend, rather than a medical source, "popped it back in place" (Tr. 61). He stated that his girlfriend payed for his medication (Tr. 61-62). Plaintiff reported that due to a "shredded meniscus" he also experienced left knee pain in damp weather (Tr. 62). He reiterated that he experienced shortness of breath and fatigue (Tr. 63). He reported the side effect of sleepiness from prescribed medications (Tr. 63). He opined that he would be unable to fulfill the standing and sitting requirements of full-time work (Tr. 63). He testified that he coped with shooting leg pain by having his girlfriend rub his leg (Tr. 64). Valium and Vicodin created concentrational problems (Tr. 64).

    **B.**    **Medical Evidence[1]**

### 1. Records Related to Plaintiff's Treatment

In July, 2009, Plaintiff sought emergency treatment for left foot pain (Tr. 257). Plaintiff was diagnosed with a small avulsion fracture (Tr. 258, 261). He was prescribed Motrin 800 and discharged (Tr. 258). In June, 2010, he sought treatment after an injury to the right flank resulted in hematuria (Tr. 264). He reported a history of depression (Tr. 265). A physical examination was otherwise unremarkable (Tr. 265-266). He was discharged in stable condition (Tr. 268). The following month, Plaintiff sought treatment for unexplained lower back pain (Tr. 278). He was prescribed Vicodin upon discharge (Tr. 280). Treating

---

[1] Medical records significantly predating the alleged June 30, 2010 onset of disability, while reviewed in full, have been omitted from the present discussion.

records note a normal gait full use of the extremities (Tr. 278). Later the same month, Plaintiff sought emergency treatment for knee and back pain after injuring his back (Tr. 229). Treating notes state that Plaintiff was born without a left kidney (Tr. 229). Plaintiff exhibited a steady gait and normal extremity movement (Tr. 230). X-rays of the thoracic spine and left knee were unremarkable (Tr. 235-236). The following month, Plaintiff sought emergency treatment for right hip pain after taking a fall (Tr. 239, 509, 513). A physical examination was unremarkable (Tr. 240, 245). September, 2010 emergency room notes state that he reported ongoing right hip pain (Tr. 282). Plaintiff displayed a limited range of right hip motion (Tr. 283). Imaging studies of the hip were unremarkable (Tr. 287-288). Later the same month, he sought treatment for hand pain (Tr. 292). Treating records note a normal gait (Tr. 292). He exhibited hand swelling but a normal range of motion (Tr. 301).

In March, 2011, Plaintiff sought emergency treatment after being "crushed" between a pizza oven and a truck tailgate (Tr. 299). Imaging studies of the right hand were unremarkable (Tr. 303). In June, 2011, he sought non-urgent treatment for hip pain (Tr. 307). He reported a "popping" hip after doing yard work (Tr. 308). X-rays of the right hip were unremarkable (Tr. 311, 313). Treating notes from the following month note continued hip pain and anxiety (Tr. 337). Dr. Leila Haddad found that Plaintiff's condition was "deteriorating" due to pain and decreased range of motion (Tr. 492). In August, 2011, Plaintiff sought treatment for a bee sting (Tr. 317). In October, 2011, Plaintiff sought emergency treatment for upper right leg pain (Tr. 249). Treating staff noted a normal gait

and the normal use of all extremities (Tr. 250). An x-ray of the pelvis was negative for abnormalities (Tr. 254). Later the same month, he sought non-urgent treatment after falling on steps (Tr. 325). He exhibited an antalgic gait (Tr. 327). Imaging studies were unremarkable (Tr. 331-332). He was prescribed Vicodin (Tr. 333). The following month, Plaintiff sought treatment for shoulder pain following a fall (Tr. 431). No swelling or bruising was noted (Tr. 428). Imaging studies of the right shoulder were unremarkable (Tr. 433).

January, 2012 x-rays of the left elbow, taken in response to Plaintiff's report of injury, were negative for abnormalities (Tr. 424). June, 2012 x-rays of the right hip, left foot, and left ankle, taken in response to Plaintiff's report of an ankle injury, were unremarkable (Tr. 412, 417-419). Treating records by Dr. Nurse Practitioner ("DNP") Andrea Connors state that Plaintiff reported "extreme pain" (Tr. 550). The following month, she noted the diagnoses of anxiety and lumbago (Tr. 596). October, 2012 imaging studies of the right hip were unremarkable (Tr. 504). Treating records note Plaintiff's report of increased hip pain (Tr. 547). In November, 2012, Dr. Connors stated that Plaintiff had not experienced "new issues" and had not "followed up" with psychological referrals (Tr. 594). December, 2012 treating records state that Plaintiff had a history of degenerative hip disease with "frequent dislocations" (Tr. 460). Physician's Assistant ("PA") Don Wilkins opined that Plaintiff would "likely need surgery" (Tr. 460).

March, 2013 treating records state that Plaintiff experienced chronic pain and anxiety

(Tr. 567). In April, 2013, Dr. Haddad completed a Medical Source Statement, finding that Plaintiff was limited to lifting 10 pounds on an occasional basis and was unable to walk even two hours in an eight-hour workday (Tr. 514). She found that Plaintiff experienced pushing and pulling limitations in the upper and lower extremities (Tr. 514). She noted manipulative limitations in reaching and handling (Tr. 515). She found that Plaintiff's condition was limited by chronic pain, falls, a reduced range of motion, and an unsteady gait (Tr. 515). June, 2013 records note the conditions of Chronic Pain Syndrome, hypertension, obesity, and digestive problems (Tr. 598). Plaintiff was referred for an orthopedic surgery evaluation (Tr. 599).

### 2. Non-Treating Sources

In February, 2012, Harold Nims, D.O. performed a consultive physical examination, noting Plaintiff's claim that he was unable to walk for more than one block due to right hip and lower back pain (Tr. 339). Plaintiff also alleged anxiety and PTSD due to being separated from his parents as a small child (Tr. 340). He reported working as a delivery driver and cook, adding that he last worked in July, 2011 as a cook (Tr. 341).

Dr. Nims noted that Plaintiff used a cane and had a slightly antalgic gait (Tr. 341). A physical examination was unremarkable except for "some hip joint tenderness" (Tr. 342). Dr. Nims concluded that Plaintiff's "physical problems [were] not over impressive" (Tr. 343). He noted that Plaintiff did "not seem to be terribly invested in resolving" the alleged "physical and emotional problems" (Tr. 344).

**C. The Vocational Testimony**

VE Harrison testified that none of Plaintiff's past relevant work skills were transferrable to other positions (Tr. 66, 225). The ALJ then described a hypothetical individual of Plaintiff's age, education and work history:

> [A]ssume a . . . person individual . . . who can only lift or carry 10 pounds frequently and 15 pounds occasionally, who can stand or walk with normal breaks for a total of one hour in an eight-hour workday who could sit with normal breaks for a total seven hours in an eight-hour workday, who should avoid frequent ascending and descending stairs, who could perform pushing and pulling motions with their upper and lower extremities within those weight restrictions but only occasional pushing or pulling with the right lower extremity, who should be restricted to stable temperatures, who could perform each of the following postural activities occasionally, climbing ramps and stairs, balancing, stooping, kneeling, crouching or crawling, who should avoid climbing ropes, ladders and scaffolds and who would require work in a low stress job defined as having no more than occasional changes in the work setting and given those restrictions could such a person perform any of the claimant's past work that you've identified? (Tr. 67).

The VE testified that the above restrictions would preclude Plaintiff's past relevant work, but would allow the hypothetical individual to perform the sedentary,[2] unskilled work of a bench assembler (2,000 positions in the regional economy); circuit board inspector (1,500); and surveillance system monitor (1,500) (Tr. 68). The VE testified further that if

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

the same individual also required the use of a cane "but the contra lateral upper extremity could be used to lift and carry," the job testimony would remain unchanged (Tr. 68). The VE testified that the need to be off task for 20 percent of the work day, or, the inability to sit for more than two hours and stand or walk for more than one hour would preclude all work (Tr. 69). In response to questioning by Plaintiff's attorney, the VE stated that an absentee rate of more than one-and-a-half days each month would preclude all competitive employment (Tr. 69).

**D.  The ALJ's Decision**

Citing the medical records, ALJ Neumann found that Plaintiff experienced the severe impairments of "obesity, chronic dislocations of right hip with mild degenerative changes, and status post meniscectomy of left knee" but that none of the conditions met or medically equaled any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-16). The ALJ found that Plaintiff retained the Residual Functional Capacity for sedentary work with the following additional limitations:

> [C]an only lift or carry 10 pounds frequently, and 15 pounds occasionally (from very little, up to one third of an [eight]-hour work day); can stand and/or walk (with normal breaks) for a total of one hour in an eight-hour work day; can sit (with normal breaks) for a total of seven hours in an eight-hour work day; should avoid frequent ascending and descending of stairs; can perform pushing and pulling motions with his upper and lower extremities within the aforementioned weight restrictions but only occasional pushing/pulling with thei right lower extremity; should be restricted to stable temperatures; can perform each of the following postural activities occasionally: climbing (ramps/stairs), balancing, stooping, kneeling, crouching, or crawling; should avoid climbing ropes, ladders, and scaffolds; requires work in a low stress job, defined as having no more than occasional changes in the work setting; and

> requires use of a cane for ambulation, but the contra lateral upper extremity can be used to lift and carry up to the exertional limits (Tr. 16-17).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform any past relevant work, he could perform the work of a bench assembler, circuit board inspector, and surveillance system monitor (Tr. 27-28).

The ALJ found Plaintiff's claims "less than fully credible" (Tr. 26). He noted that Plaintiff's testimony that he had shopped only once in the past three years contradicted evidence that he regularly shopped at Kroger (Tr. 26). The ALJ noted further that Plaintiff had been non-compliant with prescribed medication and had failed "to follow up with referrals to psychological, neurological, and orthopedic specialists" (Tr. 27). He cited Dr. Nims' finding that Plaintiff did not seem interested in resolving his alleged physical and emotional problems (Tr. 27). The ALJ observed that Plaintiff's testimony of medication side effects contradicted his November, 2011 denial of side effects (Tr. 27).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Weight Accorded Dr. Haddad's Treating Opinions

In his first argument, Plaintiff disputes the ALJ's rejection of Dr. Haddad's July, 2011 and April 2013 medical source statements. *Plaintiff's Brief,* 16-18, *Docket #13* (*citing* SSR 96–2p, 1996 WL 374188, *5 (July 2, 1996)). He contends that the ALJ did not provide adequate reasons for discounting Dr. Haddad's treating opinion. *Id.*

Plaintiff is correct that the failure to articulate "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir. 2013); *Wilson,* 378 F.3d at 544–546 (6th Cir. 2004)(citing § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011). In explaining the reasons for giving less than controlling weight to a treating physician opinion, the ALJ must consider (1) 'the length of the... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability of the opinion," (5) "consistency...with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544. "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (*citing* SSR 96–2p at *5).

Nonetheless here, the ALJ's reasons for rejecting Dr. Haddad's opinions are well supported and explained. The ALJ noted that when Dr. Haddad opined in July, 2011 that Plaintiff's condition was "deteriorating," "no apparent treating relationship [had] been established" with Plaintiff (Tr. 492). My own review of the records indicates that Dr. Haddad was not yet a "treating source" at the time she issued the July, 2011 assessment. Her opinion would thus be "entitled to no special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994) (*citing Atterberry v. Secretary of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir.1989)). The ALJ also noted that the July, 2011 opinion was undermined by Plaintiff's ability to lift an 800 to 900-pound pizza oven the previous March and the ability to perform yard work within the month prior to the assessment (Tr. 20, 48, 52).

Likewise, the ALJ's analysis of Dr. Haddad's April, 2013 assessment does not provide grounds for remand. The ALJ reasonably concluded Plaintiff's lifting limitations of "less than 10 pounds on an occasional basis" was unsupported by either the treating or consultative records (Tr. 23-24). He observed further that while Dr. Haddad found that Plaintiff was unable to walk even two hours in an eight-hour period, she did not set forth limitations for

sitting[3] (Tr. 23). The ALJ also noted that Dr. Haddad's opinion that Plaintiff was "never" able to climb, balance, kneel, crouch, or crawl was contradicted by Dr. Nims' February, 2012 observation that Plaintiff was able to squat and "stand on one leg at a time without difficulty" (Tr. 24, 342). Plaintiff's related argument that the ALJ was nonetheless required to include Dr. Haddad's discounted findings in the RFC is without merit. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir.1994)(ALJ not obliged to credit rejected claims in question to VE or by extension, in the ultimate RFC); *See also Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir.2004)(In the presence of contradicting substantial evidence the ALJ may reject all or a portion of the treating source's findings provided that he supplies "good reasons" for doing so). Because the rejection of the April, 2013 opinion was well explained and supported by substantial evidence, the treating physician analysis should remain undisturbed.

### B. The Credibility Determination

Plaintiff also disputes the finding that his allegations of limitation were not credible. *Plaintiff's Brief* at 18. He contends that the ALJ provided inadequate reasons for discounting his claims. On a related note, he argues that the ALJ failed to consider whether he could perform competitive employment on a full-time basis as required by SSR 96-8p. *Id.* at 20.

The credibility determination, guided by SSR 96-7p, describes a two-step process for

---

[3]While the ALJ provided ample grounds for rejecting the April, 2013 assessment in its totality, the RFC for one hour standing in an eight-hour day and sitting for seven does not contradict Dr. Haddad's findings (Tr. 16).

evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [4]

Plaintiff disputes the ALJ's reasons for rejecting his allegations. Specifically, he faults the ALJ for finding that the failure to seek regular treatment between September, 2010 and March, 2011 undermined the disability claim (Tr. 19). He argues, in effect, that his financial limitations prevented him from seeking treatment during that period. However, as noted by the ALJ, the record shows that Plaintiff did not hesitate to seek both emergency and non-urgent treatment on a frequent basis both before September, 2010 and after February,

---

[4]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

 (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

2011 (Tr. 229-230, 235-236, 240, 245, 257-258, 264-270, 278, 282, 292, 299, 308-313, 317, 337, 424). Moreover, the March, 2011 emergency records showing that he experienced an injury to his hand while moving an 800 to 900-pound pizza oven, standing alone, undermines his claim. His ability to lift a pizza oven (albeit with the help of his cousin and the use of a dolly) stands grossly at odds with his claim that he was incapable of performing even sedentary work. As such, the ALJ's inference that Plaintiff did not experience significant health problems between September, 2010 and March, 2011 is not unreasonable. Likewise, the ALJ did not err in finding that Plaintiff's ability to haul 25 to 30-pound drywall pieces to a dumpster in late 2010 or early 2011 undermined the his professed disability (Tr. 27, 51).

Plaintiff also takes issue with the observation that he testified that he shopped at Wal-Mart but earlier reported that he shopped at Kroger (Tr. 26). However, the ALJ raised Wal-Mart/Kroger inconsistency by way of noting that while Plaintiff testified that his shopping in the past three years was limited to one brief trip to Wal-Mart, he reported earlier that he shopped (presumably on a repeated basis) at Kroger (Tr. 202). The ALJ also noted that Plaintiff told emergency room personnel in October, 2011 that he sustained injuries in a shopping cart accident while shopping (Tr. 249). The ALJ did not err in noting that the testimony of one shopping trip in three years (to pick a Christmas present for a relative) contradicted the earlier report and medical records showing that he shopped for groceries on a repeated basis. The ALJ permissibly found that Plaintiff's professed limitations as a result of chronic pain syndrome were similarly undermined by gaps in the treatment history and the

willingness to perform strenuous work-related activity well after the January, 2010 alleged onset of disability (Tr. 24).

Finally, Plaintiff's argument that no consideration was given to whether he could perform sedentary work on a *sustained basis* should be rejected. Plaintiff relies on SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996) which states that RFC refers to "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and . . . must include a discussion of the individual's abilities on that basis," stating further that "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* (emphasis in original). However, the VE testified that the limitations found in the hypothetical question posed by the ALJ (identical to those in the RFC) would allow for full-time, sedentary work a bench assembler, circuit board inspector, and surveillance system monitor (Tr. 68). Because the hypothetical question to the VE accurately (if not over-generously) accounted for Plaintiff's limitations, the VE's responding testimony constitutes substantial evidence in support of the RFC and the ultimate conclusion that Plaintiff was capable of a significant range of full-time work. *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987).

Further, the ALJ's rationale for choosing the limitations found in the hypothetical question and RFC are well articulated. He supported his finding that Plaintiff was capable of walking for one hour a day and sitting for seven on a full-time basis by citing October, 2011, June, 2012, and October, 2012 imaging studies showed at most minor abnormalities

(Tr. 25). The ALJ permissibly noted that the unremarkable studies were also supported by Dr. Nims' observation that Plaintiff's "physical problems [were] not over impressive" and did not prevent "moderately strenuous activities involving lifting up to 15 to 20 pounds at a time for 2 to 3 hours per day" (Tr. 344). Again, while Dr. Nims' findings and the objective medical evidence support a less restrictive RFC, the ALJ credited Plaintiff's allegations to a large extent by crafting an RFC for a limited range of sedentary work with significant postural limitations (Tr. 16-17).

Because the ALJ's credibility determination and rationale for the RFC are well supported and explained, the deference generally accorded an ALJ's credibility determination is appropriate here. "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.,* 502 F.3d 532, 542 (6th Cir.2007) (*citing Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997)); *See also Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen,* 868 F.2d 921, 927 (7th Cir.1989) (*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

My recommendation to uphold the ALJ's findings should not be read to trivialize Plaintiff's physical problems. Nonetheless, the determination that he was not disabled is well within the "zone of choice" accorded to the fact-finder at the administrative hearing

level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Doc. #14] be GRANTED and Plaintiff's motion [Doc. #13] DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: January 19, 2015

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 19, 2016, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla<br>
Case Manager to the<br>
Honorable R. Steven Whalen